THE ATCHISON & NEBRASKA RAILROAD COMPANY *et al.* v. GEORGE MANLEY.

TOWN-SITE — *Size of Lots, Not Shown — Highway Established — Ejectment, Not Maintained.* The Atchison town company platted a tract of land lying on the west bank of the Missouri river for a town-site, indicating on the plat that there was a street along the river, but failing to show the width of the street or to indicate by figures the dimensions of the lots and blocks fronting thereon. Subsequently, under authority of the legislature, a highway of a specified width was established along the river, within the limits of the city, and thereafter the city authorized a railroad company to construct and maintain a railroad upon the highway so established, which was done. The ground occupied by the company does not extend beyond the limits of the highway, and the occupancy of the highway by the railroad company has continued from that time until the present. An owner of a lot fronting on the street claimed that according to the plat and dedication the railroad company was occupying a portion of his lot, and brought an action to eject it therefrom. *Held,* That as the railroad was constructed upon a highway or street of the city established as aforesaid, and was laid thereon by authority of the city, the action of ejectment cannot be maintained.

*Error from Atchison District Court.*

ACTION in ejectment, brought by *George Manley* against the *Atchison & Nebraska Railroad Company,* and the Burlington & Missouri River Railroad Company in Nebraska, for the recovery of lot number 1, in block number 111, in the city

37—42 KAS.

of Atchison. The second trial of the action was had before the court without a jury, in May, 1887, when the following conclusions of fact and of law were found and stated:

"1. On March 4, 1856, the Atchison Town Company, a corporation duly organized, by its officers caused to be made out and platted and duly acknowledged by its chief officer, a map or plat of that part of the city of Atchison usually known and designated as 'Old Atchison,' and the same was duly filed for record in the office of the register of deeds in and for the city and county of Atchison, Kansas, on March 5, 1856. Said land so mapped and platted contained a great number of lots and blocks, streets and alleys, including the lot in controversy, to wit, lot 1, block 111, Old Atchison, and the levee east thereof, upon which said lot No. 1 abutted. Most of the grounds reserved on said plat for public uses were therein set forth and described by their boundaries, courses and extent, and it was stated thereon whether they were intended for avenues, streets, lanes, alleys, or other public uses, and all the lots intended for sale were designated by numbers, and the precise length and width of most of them was stated on said plat, or in the certificate thereto by reference therein to said plat; but though lot No. 1, block 111, was mapped, platted and numbered, the precise length and width of said lot were not given in figures, nor by any reference thereto in the certificate on said plat, unless said plat, with the certificate and description thereon as hereinafter stated, are held to make the length and width of said lot definite and certain. Said block 111 and other blocks abutted on the westerly side of said levee and the Missouri river was upon the easterly side thereof, the general course of said levee from the south being north, about 12° east.

"2. The following is a correct copy of said map and plat of lot 1, block 111, and of the blocks, streets and levee in the immediate vicinity thereof, as appears on said original map, except that on the original map said adjacent blocks are divided into lots, and alleys are laid out through them which are not here represented. [See next page.]

"3. The north side of block 108 on said plat is the northern boundary of said town plat, and an alley 15 feet wide was platted north and south through the middle of the north part of said block 108, and lots are platted lengthwise east and west on both sides of said alley. Said lots on the north side of said block 108 and on the east and west sides of said alley

are marked on said plat as being each 150 feet long, making the distance 315 feet between the northwest corner and the northeast corner of said block 108. Blocks 108, 109, 110 and 111 are in a row from north to south, and Washington street is on the west and Short street is on the east of said row of blocks; and said two streets are parallel from the northern boundary of said plat south to the south side of block 110. The north line of block 111 is platted as being the same length east and west as the three blocks north of it. The blocks due west from No. 111 are between parallel streets, and are of same width north and south, but are not all subdivided into lots of uniform

NOTE. The discrepancy between the marked lengths and the apparent lengths of the south lines of the blocks 113 and 114 and the north lines of said blocks appears on the original plat.

shape and size, though the lots in the three blocks next west of No. 111 are uniform in shape and size, and are platted lengthwise east and west, and as being the same width north and south as the lots in said block No. 111 in the foregoing plat. On the west end of the west lots in the said third block west of No. 111, each lot is marked as being 45 feet wide. By comparison with fixed lines and distances upon such original plat, the distance across the levee due west from the northeast corner of block No. 111 to the river is 150 feet, and there is no evidence as to width of said levee at the time said plat

was made, nor at any other time, except as stated in this conclusion of fact.

"4. The president of said Atchison Town Company indorsed upon said map and plat his certificate and a description of lots, blocks, streets, alleys, avenues and public grounds, by which, together with the figures marked upon said blocks, streets, alleys and avenues, nearly all thereof. were definitely described, bounded and located, and the sizes thereof accurately designated; but the length and width of some of said lots were not made definite and certain by any figures marked thereon or given in said certificate thereto, but said certificate therein, so far as it refers to said lots, streets, alleys and public grounds, the size of which is not made definite and certain, is in words and figures following: 'The blocks and lots on the river or levee street have not all been fully marked out and measured, nor the width of the levee street fully settled upon. As soon as fully understood the same will be added hereto; the town company claiming the control and right and privilege of changing said levee street and the lots and blocks fronting on the river as it may hereafter determine upon, when, if any alterations are made, the same will be added thereto and explained. And the town company reserves the control and right to platted streets until the title is procured from the United States.' No addition or explanation of the matters referred to in said statement and certificate was ever made upon said town plat, or any reference thereto.

"5. Said land so mapped and platted was thereafter duly patented by the United States, and the legal title thereto vested in said town company.

"6. On January 19, 1859, said town company by deed duly executed by its president, conveyed a number of lots in said plat to George H. Fairchild by deed, containing the words and figures following: 'Whereas, said Fairchild as the holder of share No. 25, in the Atchison Town Company, is entitled to the following-described lots in the city of Atchison, in said territory of Kansas, viz., Lot No. 1, in block 111, . . . now, therefore, in consideration of the premises and by virtue of the statute in such case made and provided, the party of the first part (town company) hereby gives, grants, bargains, sells, and conveys in fee simple unto the party of the second part (Fairchild) the above-described lots, to have and to hold,' &c. Said deed was recorded in the office of the register of deeds in and for Atchison county, on January 20, 1859, and defendants admit that the plaintiff by a connected chain of

title obtained, and now has the right, title and interest so conveyed by said town company to said Fairchild, except as such right and title may have vested in the defendant, the Atchison & Nebraska Railroad Company as owner, and the Burlington & Missouri River Railroad Company in Nebraska, as lessee, or have been lost to plaintiff by virtue of rights acquired and held by said railroad companies, and relied upon and established in this action.

"7. On January 31, 1865, a public road was laid out along said river bank east of block 111, from a point about 791 feet south of said block, and was made about 8 or 9 feet wide by excavating from the bluff on the west, and filling in on the east side of such roadway. Prior to that time there was a roadway or trail used along the river bank, upon which teams traveled. Said public road was used by the public until the Atchison & Nebraska Railroad was graded, and its track laid thereon as stated in these conclusions of fact. It does not appear that said town company was notified or took any part in the proceedings of locating said road.

"8. On February 25, 1869, the president and chief engineer of the Atchison & Nebraska Railroad made a certificate, and on March 19, 1869, they filed with the county clerk of said Atchison county a map showing the location of the Atchison & Nebraska Railroad from a point fifty feet north of the east end of Atchison street, (which is two blocks, or 791 feet south of the south side of block 111,) northward to the county line. On April 2, 1869, Peter T. Abell, president of said Atchison Town Company, executed a deed to said Atchison & Nebraska Railroad Company, granting a right-of-way, in the following language : 'The following-described right-of-way, to construct its railroad over and along and near the bank of the Missouri river, from a point about 50 feet north of the north line of Atchison street, in the city of Atchison, state of Kansas, to the northern limits of said city of Atchison ; that the right-of-way over said grant to the width of 50 feet on each side of the center of the track of said railroad, as the same shall be located for and during the time of the organization of said company.' And said deed was filed with the register of deeds in and for Atchison county, Kansas, on November 9, 1882, and duly recorded. It does not appear, except as inferred from the execution of said deed, that the said P. T. Abell was authorized by said town company to execute said deed.

"9. On May 18, 1869, the mayor and council of the city of Atchison passed an ordinance entitled 'An ordinance grant-

ing the right-of-way to the Atchison & Nebraska and Leavenworth, Atchison & Northwestern railroad companies.' By the terms of §1 of said ordinance there was granted to the Atchison & Nebraska Railroad Company the right to construct and operate its railroad over and along the levee in the city of Atchison, from the northern boundary of said city to the south side of Park street in said city; and by §3 of said ordinance a right-of-way was granted to the Leavenworth, Atchison & Northwestern Railroad Company to cross the streets and alleys from the south part of said city to Main street therein. During the years of 1869 and 1870 the road-bed of said Atchison & Nebraska Railroad was graded, and the track thereof was laid upon said public road mentioned in conclusion of fact No. 7, so that said track was completed to the state line by January 1, 1871; and the track of said railroad company has ever since that time been maintained on that line, and has been in constant use as a railroad operated between Atchison, Kansas, and the city of Lincoln, in the state of Nebraska. On January 1, 1873, there was a short side-track west of the main track, commencing at or near the center of Atchison street, and extending northward a short distance, but not as far northward as to block 111; and about that time a side-track was constructed west of said main track, and between that and the middle of said 111, but the exact date of the grading for or laying said track is not disclosed, and the space so occupied by said railroad track has been continuously occupied thereby since the construction thereof.

"10. In 1884 the northwest corner of said block 111 could be established by corner-stones found on Washington street; and in that year a survey thereof was made, and the actual distance from the northwest corner of said block to the first or most westerly track of said railroad was $286\frac{3}{10}$ feet, and from that point to the middle of the next track east (the main track) the distance was $16\frac{3}{10}$ feet, and from the middle of the main track to the east side of the most easterly track of that railroad was $27\frac{5}{10}$ feet, and the entire distance from said northwest corner of said block to the east side of said most easterly track was $330\frac{1}{10}$ feet; and said most easterly track was so far towards the river that the same was overflowed in time of high water. Said lot 1, block 111, was again surveyed about April 5, 1887, when the entire distance from the northwest corner thereof to the water's edge was $340\frac{8}{10}$ feet.

"11. Said block 111 is on the river bluff, and the highest part of said lot is about 100 feet higher than the river; and

such higher and much the largest part of said lot is level, but at the east part it descends to the river very steeply. At that point the formation of the bluff is clay and loose shelving rock, and stands as near perpendicular as such formation will maintain in a state of nature. , It is very steep, but the soil is not sufficiently firm to stand precipitous, but rather it shelves.

"12. From the facts above found and stated, said lot 1, block 111, is 315 feet long on the north side thereof; and the defendants, the Atchison & Nebraska Railroad Company as owner of the track, and the Burlington & Missouri River Railroad Company in Nebraska as lessee under said Atchison & Nebraska Railroad Company, are wrongfully in the possession of $28\frac{7}{10}$ feet of the east end of said lot between the east line thereof and the line parallel therewith and $28\frac{7}{10}$ feet distant therefrom, and have been in such possession since the summer of 1869, claiming the possession thereof under said deed from said Atchison Town Company and under said ordinance, both of which are hereinbefore mentioned, and said defendants wrongfully withhold such possession."

### CONCLUSIONS OF LAW.

"1. The plat of Old Atchison made by the Atchison Town Company, together with the certificate and description written thereon, made the location and size of lot 1, block 111, definite and certain.

" 2. The deed executed by said Atchison Town Company by P. T. Abell, its president, to George H. Fairchild was not void under the act of the territorial legislature of 1855, but the same was valid and passed all of the title acquired by said Atchison Town Company from the government to George H. Fairchild, the grantee therein.

"3. The plaintiff is the owner of all of said lot 1, block 111, and is entitled to the possession thereof.

"4. The defendants, the Atchison & Nebraska Railroad Company and the Burlington & Missouri River Railroad Company in Nebraska, are in the possession of a strip off from the east end of said lot 1 of the width of $28\frac{7}{10}$ feet, the west line of which strip is parallel with the east line of said lot as platted. The said two defendants wrongfully withhold the possession thereof from the plaintiff.

"5. The plaintiff's right to said property is not barred by the statute of limitations of the state of Kansas—such statute not having become a bar at the time of the commencement of this action.

"6. The plaintiff is entitled to a judgment for the posses-

sion of said strip $28\frac{7}{10}$ feet off the east end of said lot 1, the same being bounded on the west side by a line parallel with the eastern boundary of said lot 1; and is also entitled to recover his costs herein as against said two defendants.

"7. The defendant, the Chicago, Burlington & Quincy Railroad Company, is entitled to judgment herein upon its disclaimer filed in this cause, and also to its costs in this action."

The defendant railroad companies moved the court for judgment upon the conclusions of fact found, and also for a new trial; which motions were overruled, and judgment given in favor of the plaintiff *Manley*. They excepted to the rulings, and bring the case here for review.

*W. W. & W. F. Guthrie*, for plaintiffs in error.

*L. F. Bird*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The evidence and findings of the court leave the question of the location and boundaries of lot 1 in block 111 in great doubt. The railroad company claims that the plat and dedication are so indefinite and incomplete as to the blocks, lots and street along the river-front as to be invalid. The town-site was platted in 1855, but the certificate of dedication explicitly declared that the width of the levee street was not fully settled upon, and that the blocks and lots on the river and levee were not fully measured and marked out. The lot in question was located on the levee, and although the exterior lines of the lot and block were shown on the plat filed, no figures showing the dimensions or extent of these were given. The dimensions of the other blocks and lots and the width of the streets were indicated upon the plat filed by figures placed thereon, but as to the levee and the lots fronting thereon the town company reserved the right to change and fix their width, boundaries and extent as it might thereafter determine. No alteration was ever made in the plat, nor was any amended plat filed. A distribution of lots was made among the shareholders of the town company in 1859, and the lot in controversy was apportioned and conveyed to a

stockholder named Fairchild, through whom the defendant in error claims. The railroad company claims under a conveyance from the town company executed in 1869, purporting to convey a strip of land along the west bank of the river 100 feet wide, and also under an ordinance of the city of Atchison, enacted in 1869, granting the company a right-of-way over the levee or street, which it asserts was a public highway established in 1865.

We think the judgment is not supported by the evidence and the findings. Without determining the effect of the original dedication, it is clear that ejectment will not lie. It is found upon sufficient testimony that a public highway was established along the west side of the river in 1865. This highway was laid upon what is called the "levee street," and covered the ground now occupied by the railroad company. And it is the possession of a part of this that Manley now seeks to recover. It was established as a state road under the authority of an act of the legislature which provided that it should not be less than 66 feet in width. (Laws of 1861, ch. 70.) The road record introduced in evidence showed the report that the commissioners appointed under this act made to the county commissioners on April 15, 1865, the approval thereof, and the establishment thereon of a state road along the west bank of the Missouri river, from Atchison street in the city of Atchison to the north limits of the city, and so on to the Doniphan county line. The road thus established was used as a highway by the public from that time on, and was so used when the railroad track was constructed thereon. A precipitous bluff about 100 feet high, extended to within about 56 feet of the river at the point in question, and in some places much closer, so that the highway was made with great difficulty by excavating from the bluff and filling into the river, and in places it was so difficult to make a road that it was only improved and widened to the extent of about eight or nine feet, until the railroad was built. The railroad was surveyed in 1868, and constructed in 1869 and 1870 along this narrow roadway, and it has been occupied with several tracks

and used by the company ever since. The testimony introduced by Manley shows that the distance from the center of the main track to the river is 38 feet, and that only about 15 feet west of this track was in use by the railroad company, and that opposite to the lot in controversy the railroad company only occupied 55½ feet, which was all the territory lying between the bluff and the river. Thus it appears that the entire space occupied by the company at this point is less than the width of the highway which was established, and over which the company was authorized to build. Having procured from the city the right to build and maintain its road, it is rightfully in possession if the highway was legally established. No objection is made to the legality of this highway, unless it is found in the suggestion made in the 7th finding of fact, where the court states that "It does not appear that said town company was notified or took any part in the proceedings locating said road." But no notice to the town company was essential to the laying-out of the highway. The lots had been distributed and conveyed in 1859, six years prior to the time that the road was established, and it is not stated or claimed that notice was not given to Fairchild or other lot-owners, nor that any of the statutory requirements were not complied with. From the facts disclosed in the record, it must be held that a street 66 feet in width was legally established upon the levee. While the fee of the street was in the county, the control of the same was in the city, and it was within the power of the city to grant to the railroad company the right to construct and operate its road over this levee or street. (*Garside v. A. & N. Rld. Co.*, 10 Kas. 552.) There is no claim that the road was not constructed in a legal and proper manner, as the ordinance of the city provided; but this being an ejectment, the right to recover damages for such failure is not involved. According to the testimony and findings, the railroad is laid

Railroad duly using street; ejectment fails. upon an established street within the city, in pursuance of ample power conferred upon the company by the city to occupy and use the street for this public purpose, and as this occupancy and use have never

been abandoned, it follows that Manley cannot maintain an action to dispossess or eject the company from the street so occupied; and hence we need not examine and decide the other questions presented in the case.

The judgment of the district court will be reversed, and the cause remanded, with instructions to render judgment in favor of the plaintiffs in error.

All the Justices concurring.