No. 21,380.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF
DOUGLAS, *Appellant*, v. THE CITY OF LAWRENCE, *Appellee*.

### SYLLABUS BY THE COURT.

1. TOWN SITE—*Levee and Streets Dedicated—Fee Vested in County in
Trust.* When the founders of a city or town execute, file, and record
the plat of the property devoted by them to town-site purposes, the
fee title of the levees, streets, alleys, parks, and the like vests in the
county forever, in trust for the public, by operation of law.

2. SAME—*Control of Levees and Streets Vested in City.* The lawful
possession, dominion, and control of all levees, streets, and the like,
dedicated to the public by the founders of a town site, are vested in the
city by operation of law.

3. SAME—*Control of Levees and Streets—Cannot be Divested by City.* A
city cannot, by executing a deed of conveyance to a part of a public
levee, disable itself of its public municipal power nor relinquish its
public municipal duty to control the property for the public good.

4. SAME — *Control of Levees and Streets — Nonuse — Laches — Adverse
Possession.* Those rights, duties, and privileges conferred and imposed
upon a municipal corporation exclusively for the public benefit cannot
ordinarily be lost through nonuse, laches, estoppel, or adverse posses-
sion, and statutes of limitation are not ordinarily applicable thereto.

Appeal from Douglas district court; CHARLES A. SMART,
judge. Opinion filed March 9, 1918. Affirmed.

*J. S. Amick*, of Lawrence, for the appellant.

*Thomas Harley*, and *J. Willard Ward*, both of Lawrence, for
the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by the board of county com-
missioners of Douglas county, against the city of Lawrence, to
quiet its title to a small tract of land on the bank of the Kansas
river in the city of Lawrence. The county's title sought to be
quieted was based on a deed from the city to the county exe-
cuted in 1860. The defendant city prevailed, on the following
facts and conclusions of law as found and determined by the
trial court:

"1. The tract of land in dispute in this case is clearly marked on the
plat attached to the pleadings. It is bounded on the north by the Kan-

Douglas County v. City of Lawrence.

sas river, on the west by the west line of Vermont street produced; on the south by Pinckney street and on the east by the west line of Massachusetts street produced. The ground forms a portion of the original town site of Lawrence.

"2. The original town site company filed its plat in the late fifties and on that plat this land was marked 'Levee.' This plat was destroyed by fire in the Quantrell raid of 1863, but another was reproduced by a competent engineer later by order of the Board of County Commissioners.

"3. In June, 1860, the City of Lawrence by its proper officers executed and delivered to Douglas county a warranty deed for the land in question and a few years later the county erected a jail thereon and used it for jail purposes until some five or six years ago when it erected a new jail on another site.

"4. In 1866 certain persons representing themselves to be 'Trustees of the Lawrence Town Company' executed a deed of conveyance to the city of Lawrence for this property.

"5. The county has leased this property to various persons from time to time.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    ..

"7. If the city through its mayor and councilmen had the authority so to do it has parted with all of its title to the real estate in question to the county, both by actual transfer and by permitting the county to use the same openly, notoriously, and adversely for more than fifteen years."

### CONCLUSIONS OF LAW.

"1. When the plat of the original town site was filed it vested the title of the real estate in question in the county for the uses and purposes therein designated. The use and control, however, was always in the city.

"2. The city was powerless to part with the title to this real estate or to its right to possess and use the same for the purpose for which it was dedicated.

"3. The fee of the real estate in question is still in the county, not by virtue of any conveyance, or any adverse title, but it holds the original title vested in it by the filing of the plat; the possession and use of it, however, is in the city."

Plaintiff appeals.

The county of Douglas has an unimpeachable fee title to the land, as trustee for the benefit of the public and particularly for that portion of the public represented by the city of Lawrence and its inhabitants, such title in trust being based on the dedication of the land to public uses by the original incorporators of the city of Lawrence, as evidenced by the plat filed by them at the time the city was founded, about 1854 or 1855. (Kansas Stat. [Territorial] 1859, ch. 24; Gen. Stat. 1915, §§ 6797-6808; *Comm'rs of Franklin Co. v. Lathrop*, 9 Kan.

453; *A. & N. Rld. Co. v. Garside,* 10 Kan. 552, syl. ¶ 1; *Wood v. National Water Works Co.,* 33 Kan. 590, 7 Pac. 233; *A. & N. Rld. Co. v. Manley,* 42 Kan. 577, 586, 22 Pac. 567; *A. T. & S. F. Rld. Co. v. Luening,* 52 Kan. 732, 35 Pac. 801.)

In the latter case the court said:

"In this state, the fee of all real estate, when dedicated to public use by the proprietors of any town or city, vests absolutely in the county wherein such real estate lies, and the county forever afterward holds the property in trust for such use. The county holds the property as a mere agent of the public, and in trust for the public use. But the city has the control over it as another agent of the public. (*Railroad Co. v. Garside,* 10 Kan. 552; *Showalter v. Railway Co.,* 49 id. 421.)" (p. 735.)

In the Wood case, *supra,* part of the syllabus reads:

"Where a proprietor laying off any city or town, or an addition to any city or town, . . . makes out a map or plat thereof, and reserves for public uses streets and alleys, and acknowledges, certifies, files and records the same with the register of deeds of the county in which such city or town, or addition, is situate, the fee of the streets and alleys dedicated to public use vests absolutely in the county wherein such real estate lies, and the county forever afterward holds the property in trust for such use; but the city has control over it, as another agent of the public; and such streets and alleys, under the direction and control of the public authorities, are subject to be appropriated to all the uses to which the streets of a city are usually devoted, as the wants or conveniences of the people may render necessary or important." (p. 590.)

The evidence and the inferences which may properly be derived therefrom justify the trial court's second finding of fact. The deed of the original grantor of the town-site company intended that the levees, streets, parks, etc., should pass to the public. That the grantor directed that his trustees should convey the levees, etc., by deed to the town corporation is unimportant. The statute designated the proper mode of conveying the property for the uses intended—by the execution, filing and recording of the plat—and that mode was complied with. The act of 1859, chapter 24, was intended, so far as applicable, to apply to lands theretofore platted for town sites as well as to those which should be platted thereafter. (§§ 11, 12.)

"A strip of land lying along the margin of a navigable stream was included in the plat of a city and dedicated to the public by the use of the word 'levee' written thereon. Several streets opened upon this tract and many lots had no other means of ingress and egress except over and along it. *Held,* that its dedication included its use as a street as well as

a landing-place for boats." (*McAlpine v. Railway Co.*, 68 Kan. 207, syl. ¶ 1, 75 Pac. 73.)

It seems, therefore, that when the original plat of the city of Lawrence, covering the levee in question, was filed and recorded, the prior title holders parted with all their interest in the property in dispute, and the fee title in trust passed by operation of law to Douglas county; and the beneficial use of the land passed to the general public; and the control of the land, for the benefit of the public, passed to the city of Lawrence. Consequently, the deed of 1860 from the city of Lawrence to the county of Douglas conveyed nothing that the county did not then already possess—the fee title to the property—and the deed from the city to the county executed in 1860 was void because the city had no fee title to convey, and it could not by such conveyance disable itself of its public municipal power nor relinquish its public municipal duty to control the property for the public good.

The deed of 1866 from the "Trustees of the Lawrence Town Company" to the city was of no force, as the dedication of the property to public uses several years before had conveyed all that the grantors had power to convey. And the doctrine of the effect of after-acquired title is not applicable.

A levee in a city, dedicated to public use, does not substantially differ from a street or public park. In *Webb v. Demopolis,* 95 Ala. 116, it was held:

"A city or town has no alienable interest in the public streets thereof, but holds them in trust for its citizens and the public generally; and neither its acquiescence in an obstruction or private use of a street by a citizen, or laches in resorting to legal remedies to remove it, nor the statute of limitations, nor the doctrine of equitable estoppel, nor prescription, can defeat the right of the city to maintain a suit in equity to remove the obstructions." (Syl. ¶ 4.)

While a municipal corporation may part with its private, proprietary rights through conveyances, or lose them through prescription, adverse possession, or by statutes of limitation, yet the great weight of authority is that those rights, duties and privileges which are conferred or imposed upon a municipal corporation exclusively for the public benefit are not ordinarily lost through nonuse, laches, estoppel, or adverse possession, nor are statutes of limitation applicable thereto. (*Simplot v. Chicago, M. & St. P. Ry. Co.*, 16 Fed. 350, syl. ¶ 2;

*San Leandro v. Le Breton,* 72 Cal. 170, 13 Pac. 405; *Orena v. City of Santa Barbara,* 91 Cal. 621, 28 Pac. 268; *Lee et al. v. Town of Mound Station,* 118 Ill. 304; *Cheek v. City of Aurora et al.,* 92 Ind. 107; *Wolfe et al. v. The Town of Sullivan,* 133 Ind. 331; *The City of Waterloo v. The Union Mill Co.,* 72 Iowa, 437; *Taraldson v. Town of Lime Springs,* 92 Iowa, 187; *Witherspoon v. Meridian,* 69 Miss. 288; *Territory v. Deegan,* 3 Mont. (Ty.) 82; *Price v. Inhabitants of Plainfield,* 40 N. J. Law, 608; *St. Vincent Orphan Asylum v. City of Troy,* 76 N. Y. 108; *Commonwealth v. Moorehead,* 118 Pa. St. 344; *Sims v. Chattanooga,* 70 Tenn. 694; *Yates v. Town of Warrenton,* 84 Va. 337; *Ralston v. Town of Weston,* 46 W. Va. 544; *Childs v. Nelson,* 69 Wis. 125.)

There is still another, somewhat different, legal and equitable principle which bars the claims of Douglas county as sought to be maintained in this action. The county became the trustee holder of the title in 1855, or thereabouts, by operation of law. The county was thereby charged in law with a trustee's duties—to hold the title inviolably for the benefit of its *cestui que trust,* who under this trust were the general public. The county has always been charged in law with notice of the rights of the public. It could acquire no interest in the property inconsistent with its duty as trustee. It was charged in law with notice that the city could not abdicate its public municipal power nor escape its public duty to control the property for the benefit of the *cestui que trust*—the people in general, and the inhabitants of Lawrence in particular.

The judgment of the district court was correct, and it is affirmed.