# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37242

PIONEER IRRIGATION DISTRICT,

    Plaintifff-Counterdefendant-Respondent,

v.

CITY OF CALDWELL,

    Defendant-Counterclaimant-Appellant.

Boise, December 2011 Term

2012 Opinion No. 132

Filed: November 14, 2012

Stephen Kenyon, Clerk

SUBSTITUTE OPINION, THE COURT'S PRIOR OPINION DATED APRIL 27, 2012 IS HEREBY WITHDRAWN

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

The district court's grant of partial summary judgment is <u>affirmed</u> in part, <u>reversed</u> in part and the matter is <u>remanded</u> for proceedings consistent with this opinion.

Hamilton, Michaelson & Hilty, LLP, Nampa, and Holland & Hart, LLP, Boise, for appellant. Eric Stidham argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Brad Williams argued.

---

HORTON, Justice.

In 2008, Pioneer Irrigation District (Pioneer) filed suit against the City of Caldwell (the City), seeking declaratory and injunctive relief, as well as the removal of urban stormwater discharge conduits constructed by the City without Pioneer's authorization. The district court granted summary judgment in favor of Pioneer. The court held that Pioneer held exclusive interests in its irrigation easements and rights-of-way such that Pioneer could maintain trespass claims against the City. The court also held that I.C. § 42-1209 granted Pioneer the power to remove encroachments constructed without its permission that it deemed to unreasonably or materially interfere with its easements and rights-of-way. The district court held that review of certain decisions by the irrigation district would be limited to whether they were arbitrary and

1

capricious or reached in an unreasonable manner. The City moved for permissive appeal, which motion the district court granted. We affirm the decision of the district court, except for its holding that irrigation easements and rights-of-way are exclusive interests.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pioneer instituted this action in early 2008, seeking declaratory and injunctive relief against the City. Pioneer alleged that by adopting a new municipal storm water management manual, the City had caused or permitted developers to install storm water discharge pipes such that municipal storm water was being discharged into Pioneer's irrigation delivery and drainage facilities without Pioneer's permission. Pioneer alleged that these discharge pipes unreasonably and materially interfered with its irrigation easements and rights-of-ways. Pioneer sought several judicial declarations, including that Pioneer was authorized to both remove and prohibit the future construction of unauthorized, unreasonable encroachments pursuant to I.C. § 42-1209. Pioneer also sought injunctive relief, alleging that it enjoyed an exclusive right to possession of its irrigation facilities and that municipal storm water runoff events were a trespass upon those facilities.

Relevant to this appeal, the parties filed cross-motions for summary judgment. The district court granted portions of Pioneer's motion, holding that where Pioneer exercised its discretion under I.C. § 42-1209 to deny a proposed encroachment as an unreasonable or material interference, a court's review of that exercise of discretion is limited to whether the decision was reached in an unreasonable manner, arbitrary and capricious, or based upon findings that were clearly erroneous. The court also held that I.C. § 42-1209 permits the owner of an irrigation easement or right-of-way to engage in self-help to remove an encroachment that was constructed without permission and unreasonably or materially interfered with the easement or right-of-way. The district court held that the owner of an irrigation easement or right-of-way enjoys an exclusive interest therein, and on those grounds denied the City's motion for summary judgment seeking dismissal of Pioneer's trespass claims.

Following the district court's grant of the City's I.A.R. 12 motion for permissive appeal, this Court granted the City leave to appeal.

## II. STANDARD OF REVIEW

We review a trial court's grant of summary judgment under the same standard applied by the trial court. *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005). A reviewing court

2

will construe all disputed facts and make all reasonable inferences in favor of the nonmoving party. *Sprinkler Irr. Co. v. John Deere Ins. Co.*, 139 Idaho 691, 695-96, 85 P.3d 667, 671-72 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

### III. ANALYSIS

**A. This Court's holding is limited to those issues raised in the City's motion for permissive appeal.**

The City attacks the district court's holdings on a variety of grounds, including errors in statutory interpretation, the constitutionality of the district court's statutory interpretation, and lack of specificity regarding the easements' scope. Pioneer similarly defends on a variety of grounds, including statutory interpretation, the application of res judicata to preclude collateral challenges to Pioneer's ownership interests, and judicial estoppel of claims that the judgment is invalid because it does not include all affected servient landowners.

However, when considering a permissive appeal, we must "address only the precise question that was framed by the motion and answered by the trial court." *Winn v. Frasher*, 116 Idaho 500, 501, 777 P.2d 722, 723 (1989). In the present case, the City moved for permissive appeal of the court's grant of partial summary judgment. The district court granted that motion. The City's and the district court's express statements of the issues to be addressed by the permissive appeal were nearly verbatim. The district court phrased those issues as follows:

1. Idaho Code section 42-1209 vests Pioneer with the initial discretion to determine whether an encroachment is likely to unreasonably or materially interfere with the use and enjoyment of its irrigation or drainage easements or rights-of-way, and to deny permission for the encroachment on those grounds. Judicial review of Pioneer's determination and decision is limited to (a) whether Pioneer's denial of permission to encroach was arbitrary and capricious or based on clearly erroneous findings, and (b) whether Pioneer's decision-making process was reasonable.

2. Idaho Code section 42-1209 authorizes Pioneer to enforce the removal of any encroachments installed after the effective date of section 42-1209 that Pioneer determines materially and unreasonably interfere with the use and enjoyment of its irrigation and drainage easements or rights-of-way, at the expense of the encroaching party, subject to certain limitations:

    A. Pioneer must initially request removal of the encroachment by the encroaching party;

3

B. Pioneer's right of self-help (i.e., in lieu of pursuing a judicial remedy) to remov[al] of the encroachment must be accomplished within the borders of its easement or right-of-way and without a breach of the peace; and

C. Judicial review of Pioneer's determination and decision is limited to (a) whether Pioneer's decision to request removal of an existing encroachment was arbitrary and capricious or based on clearly erroneous findings, and (b) whether Pioneer's decision-making process was reasonable.

3. That Pioneer Irrigation District enjoys exclusive rights in its primary easements and rights-of way under Idaho Code sections 42-1102 and 1209.

We are bound to address only these issues. Since several of the parties' claims and defenses on appeal are irrelevant to these precise questions, we do not address them here.

**B. Under I.C. § 42-1209, review of Pioneer's decision whether to permit an encroachment is an exercise of discretion.**

The City asserts that the question whether a proposed encroachment constitutes an unreasonable or material interference is a question that should be resolved by a trier of fact. The district court disagreed, reasoning that irrigation districts are quasi-municipal corporations engaged in the proprietary role of providing irrigation for landowners' benefit, and that thus the scope of a civil challenge to an irrigation entity's denial of permission to encroach must be limited to whether (a) the denial was arbitrary and capricious or based on clearly erroneous findings, or (b) the entity's decision-making process was unreasonable.

To resolve this issue, we must derive legislative intent, looking first to the language of I.C. § 42-1209. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 312, 109 P.3d 161, 166 (2005). Where a statute is unambiguous, its plain language controls. *Id.* If a statute is ambiguous because more than one reasonable interpretation exists, we look to rules of statutory construction for guidance. *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty.*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). In the event that this Court is required to engage in statutory construction, we may ascertain legislative intent from the statute's context, the public policy in support of the statute, and the statute's legislative history. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999).

Idaho Code § 42-1209 was enacted in 2004. 2004 Idaho Sess. Laws, ch. 179, § 3, at 563. The statute expressly recognizes irrigation easements and rights-of-way are "essential" to

4

"irrigation districts, Carey act operating companies, nonprofit irrigation entities, lateral ditch associations, and drainage districts," providing:

> Accordingly, no person or entity shall cause or permit any encroachments onto the easements or rights-of-way . . . without the written permission of the irrigation district . . . owning the easement or right-of-way, in order to ensure that any such encroachments will not unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way. Encroachments of any kind placed in such easement or right-of-way, without such express written permission shall be removed at the expense of the person or entity causing or permitting such encroachments, upon the request of the owner of the easement or right-of-way, in the event that any such encroachments unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way. . . .

I.C. § 42-1209.

It is evident from the plain language of the statute that merely providing notice to the ditch owner[1] of a proposed encroachment does not permit a party to "cause or permit" the encroachment. Rather, I.C. § 42-1209 requires "written permission" from the ditch owner in order to "ensure that any such encroachments will not unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way." The plain language of the statute grants the ditch owner authority to evaluate the impact of a proposed encroachment and grant or withhold permission based on that evaluation. To hold otherwise would effectively eviscerate the ditch owner's express statutory authority to grant or withhold permission for the encroachment. Accordingly, we hold that the ditch owner is vested with the discretion to determine whether an encroachment would result in unreasonable or material interference with the easement or right-of-way, and based on that exercise of discretion, is vested with the authority to grant or deny a requested encroachment.[2]

---

[1] "Ditch owner," as used in this opinion, is shorthand for those "irrigation districts, Carey act operating companies, nonprofit irrigation entities, lateral ditch associations, and drainage districts" having easements and/or rights-of-way governed by I.C. § 42-1209.

"Although the person who has an easement for a ditch across the land of another does not thereby gain legal title to any portion of that land, *Reynolds Irrig. Dist. v. Sproat,* 69 Idaho 315, 206 P.2d 774 (1948), the owner of such an easement is often called the 'owner' of the ditch." *Camp v. E. Fork Ditch Co., Ltd.,* 137 Idaho 850, 857, 55 P.3d 304, 311 (2002).

[2] The determination of "unreasonable or material interference" is not restricted to the physical impediment that may be created at the point of encroachment. Rather, the ditch owner may take into account the impact of the encroachment or encroachments upon the use and enjoyment of the easement or right-of-way. It is not difficult to envision encroachments that do not present a physical impediment to the operation or maintenance of a ditch, such as drainage diversions, which in times of heavy precipitation would permit introduction of a quantity of water exceeding the carrying capacity of the system, resulting in the ditch's failure. Such a circumstance would evidently

We next examine the scope of legal challenges to the ditch owner's exercise of discretion regarding encroachments. The City asserts that under I.R.C.P. 84(a)(1),[3] the ditch owner's decision is not entitled to limited judicial review because there is no statute providing a right of judicial review. However, I.R.C.P. 84(a)(1) is inapplicable in such situations. Review of such decisions is not judicial review of an agency's action. Rather, courts will be called upon to evaluate the ditch owner's exercise of discretion in some form of civil action. Without attempting to identify all possible actions where these decisions may be reviewed, it is evident that such actions may well include those seeking injunctive relief or recovery of the costs of removal of an offending encroachment.

The ability to exercise the discretionary authority that I.C. § 42-1209 vests in the ditch owner is one means by which the ditch owner is able to satisfy obligations imposed upon it by law. *See* I.C. § 42-1201 (to the extent capable, keep irrigation ditches sufficiently full to meet the requirements of those entitled to water); I.C. § 42-1202 (maintain the good order and repair of irrigation ditches, canals, and conduits); I.C. § 42-1203 (maintain embankments in order to prevent waste of irrigation water); I.C. § 42-1204 (duty to maintain waterworks in good repair in order to avoid damage to others). Ditch owners face prospective liability for failure to meet these statutory obligations. *Stephenson v. Pioneer Irr. Dist.,* 49 Idaho 189, 194, 288 P. 421, 422 (1930) (owner of an irrigation ditch faces liability for negligent construction, maintenance, and operation thereof).

We hold that a ditch owner's determination whether to permit an encroachment will be reviewed to determine whether the decision-making process was reasonable, the determination was arbitrary and capricious, or the findings upon which the determination was reached were clearly erroneous. This conclusion is consistent with the Legislature's determination that the ditch owner should be vested with the authority to make such decisions and recognizes that ditch owners are required to satisfy significant statutory obligations and face exposure to liability if they fail to fulfill those obligations. Thus, we affirm the district court's decision on this issue.

**C. Under some circumstances, a ditch owner may remove encroachments at the encroaching party's expense and without prior judicial intervention, and the decision to remove an unpermitted encroachment will be reviewed to determine**

impair the ditch owner's "use and enjoyment" of its easement or right-of-way. Likewise, one encroachment, by itself, may not result in unreasonable or material inference while multiple similar encroachments may.

[3] In part, I.R.C.P. 84(a)(1) states that "[a]ctions of state agencies or officers or actions of a local government, its officers or its units are not subject to judicial review unless expressly authorized by statute."

**whether the decision-making process was reasonable and whether the decision was arbitrary and capricious or based upon clearly erroneous findings.**

1.      The right to self-help

The City contends that a ditch owner must initiate judicial proceedings in order to effect an encroachment's removal. The district court held that a ditch owner may exercise self-help to remove encroachments constructed after the effective date of I.C. § 42-1209 for which written permission was not obtained and that unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way. We affirm the district court and hold that, under certain circumstances, I.C. § 42-1209 authorizes the ditch owner to remove an encroachment without prior judicial approval.

We first look to the plain language of the statute to derive legislative intent. Four conditions must be satisfied before an encroachment "shall" be removed. First, the encroachment must have been constructed after the effective date of I.C. § 42-1209, as the statute's provision for "such express written permission," which clearly references preceding language in the statute, was not a requirement prior to that date. Second, the encroachment must have been constructed without permission. *Id.* Third, the encroachment must unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way. *Id.* Fourth, the ditch owner must request that the party responsible for the encroachment remove it. *Id.*

Upon satisfaction of these requirements, the statute provides that the encroachment "shall be removed at the expense of" the encroaching party. *Id.* In the event that the party responsible for the encroachment accedes to the demand for its removal, the statute clearly places the financial burden for the cost of the removal upon the encroaching party.

The statute is silent, however, as to what happens when the party responsible for the encroachment fails to act upon the demand within a reasonable time.[4] The question then is whether the ditch owner must go to court in order to vindicate its right to cause the removal of the encroachment, or whether it may act first and seek compensation later. When confronted with statutory silence as to an appropriate remedy, this Court is "free to apply general rules of statutory construction to ascertain" legislative intent. *Bilow v. Preco, Inc.*, 132 Idaho 23, 32, 966

---

[4] If the party responsible for the encroachment is not afforded reasonable time to respond to the request, then the statutory requirement of a "request" for removal would be nullified. What constitutes a "reasonable time" to respond to the request is clearly dependent upon circumstances. A request for removal made during spring or summer months when a ditch is full may well require an immediate response. Conversely, during winter months, when water is not flowing, there may not be a need for immediate action.

P.2d 23, 32 (1998). When engaging in statutory construction, "the Court should consider not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history in order to discern and implement the intent of the legislature." *Gonzalez v. Thacker*, 148 Idaho 879, 881, 231 P.3d 524, 526 (2009) (citing *Hayden Lake Fire Prot. Dist. v. Alcorn,* 141 Idaho 388, 398–99, 111 P.3d 73, 83–84 (2005) and *Kelso & Irwin, P.A. v. State Ins. Fund,* 134 Idaho 130, 134, 997 P.2d 591, 595 (2000)).

The policy advanced by I.C. § 42-1209 is clear: given the essential role that irrigation facilities play in this state, people must not construct encroachments that unreasonably or materially interfere with their operation. If a ditch owner is forced into litigation in order to secure the removal of an encroachment constructed without permission and which unreasonably or materially interferes with the use and enjoyment of the easement or right-of-way, the ditch owner will be forced to wait weeks, if not months, to cause the removal of an encroachment that ought not have been constructed in the first instance. We conclude that the policy underlying I.C. § 42-1209 supports the right of the ditch owner to remove an encroachment without first resorting to the courts in the event that the party causing or permitting the encroachment fails to act upon the request for the encroachment's removal.

Interpreting I.C. § 42-1209 as authorizing the ditch owner to remove an encroachment that has been constructed without permission and which unreasonably or materially interferes with the use and enjoyment of the easement or right-of-way is consistent with the common law rule that predated the enactment of the statute. An "easement owner has a right to remove obstructions unreasonably interfering with use of the easement, so long as there is no breach of the peace." *Carson v. Elliott*, 111 Idaho 889, 891, 728 P.2d 778, 780 (Ct. App. 1986). "Statutes are construed under the assumption that the legislature was aware of all other statutes and legal precedence at the time the statute was passed." *Druffel v. State, Dep't of Transp.*, 136 Idaho 853, 856, 41 P.3d 739, 742 (2002). Accordingly, we presume that the Legislature knew that the self-help remedy was available to irrigation easement owners when it enacted I.C. § 42-1209. The language of the statute does not demand a construction in abrogation of the common law.

Further, we note that this Court must read I.C. § 42-1209 in the context of the statutory scheme that prescribes the rights and obligations of ditch owners. *See* I.C. §§ 42-1201 – 1204. In light of the duties that the Legislature has imposed upon ditch owners, in some circumstances it

8

will be imperative that they have the authority to act expeditiously, and without prior court intervention, to address exigencies (and potential liability to third parties) created by unpermitted encroachments. An interpretation of I.C. § 42-1209 that authorizes ditch owners to remove encroachments that unreasonably interfere with the ditch and which have been constructed without permission advances the legislative objectives of permitting ditch owners to meet the needs of water users and protecting the persons and property of third parties.

We hold that I.C. § 42-1209 does not modify the ditch owner's common law right to self-help. Rather, the statute codifies the ditch owner's right to recover the cost of removing unpermitted encroachments that unreasonably or materially interfere with the use and enjoyment or the easement or right-of-way. We therefore affirm the district court's decision on this issue.

2.    The standard of review of challenges to a ditch owner's decision to demand removal of an encroachment or remove an encroachment without prior judicial approval

As with the standard of review of a ditch owner's decision to deny permission to encroach upon its easement or right-of-way, the parties disagree as to the standard to be applied when the ditch owner demands removal of an encroachment or exercises its right to remove an encroachment that has been constructed without permission. The district court concluded that review of such decisions is limited to determining whether the decision-making process was reasonable and whether the decision was arbitrary and capricious or based upon clearly erroneous findings.

The considerations that led to our conclusion regarding review of a ditch owner's decision to grant or withhold permission to construct an encroachment are applicable here. The Legislature has vested ditch owners with discretion to grant or deny permission to construct an encroachment, and the exercise of that discretion is subject to review to determine whether the decision-making process was reasonable, and whether the decision was arbitrary and capricious or based upon clearly erroneous findings. Considering the statutory obligations imposed upon ditch owners and the potential liability that may result from failure to fulfill those obligations, it would be unreasonable to hold that a party who has constructed an encroachment in violation of its statutory obligation to obtain permission may thereby nullify the discretionary authority that the Legislature has conferred upon irrigation authorities. *See Turner v. Washtenaw Cnty. Rd. Comm'n*, 467 N.W.2d 4, 4-5 (Mich. 1991) (review of road commission's statutorily-authorized removal of encroachment limited to whether it reasonably exercised its discretion); *Devine v.*

9

*City of Seward*, 258 P.2d 302, 304-05 (Kan. 1953) (challenge to city's self-help removal of encroachment limited to whether the decision to remove was arbitrary, capricious, or not made in good faith). We hold that a ditch owner's decision to request removal of encroachments constructed without permission or to thereafter remove offending encroachments shall be subject to review to determine whether a reasonable decision-making process was employed, and whether the decision was arbitrary and capricious or based upon clearly erroneous findings. We therefore affirm the decision of the district court as to this issue.

### D. A ditch owner does not enjoy exclusive rights in its primary easements and rights-of-way.

The district court held that, pursuant to I.C. §§ 42-1102 and 1209, Pioneer enjoys exclusive rights in its primary easements and rights-of-way. We disagree.

Before turning to these particular statutes, it is appropriate to look at this Court's earlier statements explaining the scope of rights of a ditch owner. In Idaho, the common law has long recognized that irrigation easements and rights-of-way are not exclusive. *E.g.*, *City of Bellevue v. Daly*, 14 Idaho 545, 550-51, 94 P. 1036, 1038-39 (1908) (owner of servient estate not liable for pollution caused to irrigation waters by his cattle in the ordinary course of husbandry and likewise not responsible for constructing a fence to protect the irrigation easement or right-of-way); *Coulsen v. Aberdeen-Springfield Canal Co.*, 47 Idaho 619, 630-31, 277 P. 542, 546 (1929) (irrigation easement owner not entitled to exclusive possession of property upon which easement is located and cannot assert trespass where servient estate owner's cattle enter easement; rather where easement owner fails to adequately maintain irrigation conduit and injury to servient estate owner's cattle results, easement owner is liable); *Pioneer Irr. Dist. v. Smith*, 48 Idaho 734, 739, 285 P. 474, 476 (1930) (irrigation district's right-of-way is not exclusive and servient landowner's reasonable, ordinary, and usual farming of hogs near and on easement is permissible; irrigation easement owner is responsible for damages to irrigation conduit resulting therefrom); *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003) (owners of servient estate "entitled to make any uses of their property that d[o] not unreasonably interfere with the District's enjoyment of its [irrigation] easement."). In fact, this Court has expressly recognized railroad easements as distinguishable from irrigation and other types of easements and rights-of-way, and held that only railroad easements are exclusive. *Lake CDA*

10

*Invest., LLC v. Idaho Dep't of Lands*, 149 Idaho 274, 281-82, 233 P.3d 721, 728-29 (2010)[5] (citing *Coulsen*, 47 Idaho at 627-28, 277 P. at 544-45).

As previously noted, the Legislature is presumed to be aware of this Court's earlier decisions. *Druffel*, 136 Idaho at 856, 41 P.3d at 742. Certainly, our Legislature knows how to abrogate decisions from this Court. *See*, *e.g*., Act of March 4, 2010, ch. 29, 2010 Idaho Sess. Laws 49, 49–50 (abrogating holding of *Rammell v. Idaho State Dep't of Agric.,* 147 Idaho 415, 422–23, 210 P.3d 523, 530–31 (2009)). This Court will not interpret a statute as abrogating the common law unless it is evident that was the Legislature's intent. *Statewide Const., Inc. v. Pietri*, 150 Idaho 423, 429, 247 P.3d 650, 656 (2011), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011). *See also Baker v. Ore–Ida Foods, Inc.,* 95 Idaho 575, 583, 513 P.2d 627, 635 (1973) ("Where the clear implication of a legislative act is to change the common law rule we recognize the modification because the legislature has the power to abrogate the common law."). Nothing in the language of I.C. § 42-1209 indicates legislative intent to overturn our longstanding precedent that ditch owners' rights are non-exclusive.

Further, this Court has previously addressed whether I.C. § 42-1102 expands the rights of irrigation easement holders. In *Nampa & Meridian Irrigation District v. Washington Federal Savings*, 135 Idaho 518, 20 P.3d 702 (2001), this Court rejected the irrigation district's claim that the statute expanded the rights of ditch owners. *Id*. at 522, 20 P.3d 706 ("We conclude that neither the provisions expressed in [a channel change easement] nor the quoted language of the statute . . . operate to create a greater right"). Instead, we stated: "I.C. § 42-1102 only contemplates a right-of-way for cleaning, maintaining, and repairing canals. The statute provides notice to owners of land that the owner of the ditch or canal has the right-of-way, and serves to clarify what the right-of-way includes." *Id*. at 524, 20 P.3d at 708. Although the issue presented in *Nampa & Meridian Irrigation District* related to a dispute between the ditch owner and the owner of the servient estate, this Court rejected the suggestion that I.C. § 42-1102 expanded the rights of ditch owners: "Missing from the statute is any suggestion that owners of the right-of-way may, in cleaning, maintaining, or repairing the canal or ditch, restrict the servient landowner's use of the right-of-way because of safety concerns." *Id*.

---

[5] Although Pioneer challenges the application of this Court's precedent to the matter at hand on the ground that the precedent predates the 2004 enactment of I.C. § 42-1209, we decided *Lake CDA Investments* in 2010.

As the statutes lack a clear expression of legislative intent to abrogate the common law and grant easement owners an exclusive right to possession, we conclude that the district court erred in holding that owners of irrigation easements and rights-of-way have an exclusive possessory interest in those easements.

**E. Neither party is entitled to attorney fees on appeal.**

The City requests attorney fees on appeal pursuant to both I.C. §§ 12-117(1) and 12-121. Pioneer requests attorney fees pursuant to I.C. § 12-121. Under I.C. § 12-117(1), the prevailing party in an administrative or civil judicial proceeding between a state agency or political subdivision and a person is entitled to attorney fees if "the nonprevailing party acted without a reasonable basis in fact or law." Under I.C. § 12-121 and I.R.C.P. 54(e)(1), a court may award a prevailing party attorney fees if "the case was brought, pursued or defended frivolously, unreasonably, or without foundation . . . ." Since each party has only prevailed in part on this appeal, we decline to award attorney fees to either party.

### IV. CONCLUSION

We affirm a portion of the district court's grant of partial summary judgment on the grounds that, pursuant to I.C. § 42-1209, a ditch owner's determination that an encroachment unreasonably or materially interferes with the right-of-way shall be overturned if it is arbitrary and capricious, was based upon clearly erroneous findings, or was not the product of a reasonable decision-making process. We likewise affirm the district court's grant of partial summary judgment on the grounds that, pursuant to I.C. § 42-1209, a ditch owner may engage in self-help to remove an encroachment that it has determined unreasonably or materially interferes with its right-of-way, and hold that such action is reviewed under the same standard applicable to the denial of permission to construct an encroachment. However, we reverse the district court's grant of partial summary judgment holding that ditch owners enjoy exclusive rights of possession. As each party has prevailed in part, we decline to award attorney fees and costs. This matter is remanded to the district court for proceedings consistent with this opinion.

Justice EISMANN **CONCURS**.

J. JONES, Justice, specially concurring.

I concur in the Court's Opinion, as far as it goes in applying I.C. § 42-1209 to the specific factual situation of this case, but write separately to opine on certain matters not specifically addressed.

The Opinion holds that "a ditch owner's[6] determination whether to permit an encroachment [in its easement or right-of-way] will be reviewed to determine whether the decision-making process was reasonable, the determination was arbitrary and capricious, or the findings upon which the determination was reached were clearly erroneous." Thus, a decision made by an irrigation district pursuant to Section 42-1209 must be the result of a reasonable decision-making process and the determination must be based upon findings. A reasonable decision-making process implicates procedures such as the Legislature has required for state administrative agencies in I.C. § 67-5242 and for local planning agencies in Section 67-6535. That is, a right to notice, a meaningful opportunity to be heard, a record of the proceedings, findings of fact, and a reasoned decision. While the Legislature has not specified the type of procedure to be employed pursuant to I.C. § 42-1209, this Court has the inherent "power to fashion the procedures necessary to perform [its] duties." *City of Boise v. Ada County*, 147 Idaho 794, 802, 215 P.3d 514, 522 (2009). The process requirements we here adopt for review of irrigation district decisions under Section 42-1209 will help to ensure the due process rights of the adverse party and a reviewable record on appeal. By adopting standards comparable to those mandated by the Legislature for other proceedings, the Court has a tested yardstick to ensure against arbitrary and capricious decision-making.

The City raises a number of concerns regarding the effect of the district court's decision on its historic drainage or flowage rights, the irrigation district's ability to exercise self-help, and the like. Specifically, the City points to a position statement contained in the record wherein Pioneer states:

> [Caldwell's storm water runoff] should not be drained through existing irrigation drainage facilities even if the post development land proposed for such drainage is land that used to be historically drained in such a manner. Existing irrigation

---

[6] I would read "ditch owner's" to mean an irrigation district because that is the specific entity involved in this case. Ditch owners other than irrigation districts−Carey act operating companies, nonprofit irrigation entities, and lateral ditch associations−are private, non-governmental entities. Drainage entities may be either private or quasi-governmental. There may well be valid legal or policy reasons for confining our holding to governmental entities or irrigation districts specifically, but that is beyond the scope of our undertaking in this case. Since our decision is limited to the issues raised in the City's motion for permissive appeal, a determination as to whether the standard of review we adopt here applies to entities other than irrigation districts remains to be decided on another day, in another case.

> drainage facilities were designed to drain excess water from undeveloped agricultural lands and were not designed, constructed and/or not maintained to accept storm water runoff from developed lands.

However, the City's concerns may be overstated. Section 42-1209 does not purport to affect drainage, flowage, or runoff rights that predate the July 1, 2004 effective date of Section 42-1209. Nor does it affect anything other than physical encroachments placed in an easement or right-of-way, such as roads, utilities, fences, gates, pipelines, structures, or other objects. Section 42-1209 does not restrict or enhance any right of self-help beyond that available under the common law. Indeed, the Court cites *Carson v. Elliott*, 111 Idaho 889, 891, 728 P.2d 778, 780 (Ct. App. 1986) for the proposition that an "easement owner has a right to remove obstructions unreasonably interfering with use of the easement, so long as there is no breach of the peace." As the Court points out, this common law rule predated the enactment of the statute and does not result in an expansion of the right of self-help. Further, the Court does not purport to expand the review procedure adopted here to any other statutes or situations. As previously noted, the Opinion only addresses the three issues decided by the district court—the review process for Pioneer's decisions under Section 42-1209, whether Pioneer has the right of self-help, and whether Pioneer enjoys exclusive rights in its primary easements and rights-of-way. The Opinion does not purport to address other than these three limited issues.

Chief Justice BURDICK and Justice W. JONES **CONCUR**.